## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| KAYAK SOFTWARE CORP. ) | CIVIL ACTION NO.: |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| TRAVELZOO INC. ) | |
| Defendant. ) | SEPTEMBER 3, 2010 |

## VERIFIED COMPLAINT AND JURY DEMAND

Plaintiff Kayak Software Corporation ("Kayak"), through its attorneys, Valorem Law Group LLC and Bingham McCutchen LLP, brings this action against Defendant Travelzoo Inc. and alleges as follows:

### INTRODUCTION

1.      This is an action for copyright infringement arising under the United States Copyright Act, 17 U.S.C. § 501 *et seq.*, for injunctive relief under the United States Copyright Act, 17 U.S.C. §502, damages, and for violations of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §42-110a *et seq.*

2.      The claims arise out of the conduct of Travelzoo who, after failing in its attempts to acquire German travel search company, swoodoo, usurped swoodoo's successful television commercial campaign for Travelzoo's own travel search company, Fly.com.  It also arises out of Travelzoo's attempt to unfairly compete with Kayak, the successful acquirer of swoodoo, not only by utilizing the infringing television commercial in the United

States and other markets where Fly.com competes with Kayak, but by additional conduct described more fully below including but not limited to: (a) using specific confidential information covered by a Non-Disclosure Agreement signed with swoodoo for its own benefits in connection with creating the commercial for Fly.com; (b) creating a website that resembles the "look and feel" of Kayak's website, kayak.com – a successful site that substantially predates the Fly.com site; (c) upon information and belief, attempting to bid on the kayak.de domain in Germany, and (d) purposely choosing and utilizing a confusingly similar tag line to Kayak's for use with Fly.com. That tagline: "Compare hundreds of travel sites in one search" is nearly identical to Kayak's pre-existing tagline: "Compare hundreds of travel sites at once".

## THE PARTIES

3.    Plaintiff Kayak is a privately-held Connecticut corporation with its corporate headquarters at 55 North Water Street, Norwalk, Connecticut. Kayak's primary business is a travel search engine website that aggregates information from hundreds of other travel sites to help end users book flights, hotels, cruises, rental cars and other travel-related items. Kayak does not sell products directly to consumers, but rather, it provides the consumer with aggregated search results from other sites and then redirects the consumer to those other sites to make the final purchase.

4.    swoodoo AG ("swoodoo") is a German public limited liability company whose primary business is the operation of travel search engines that aggregate information from airlines and online travel agencies to assist consumers in purchasing flights. swoodoo operates a website at swoodoo.com, but also owns the brand and domain flugsupermarkt.com ("flug" meaning "flight" in German). swoodoo's primary business market is Europe.

swoodoo was acquired by Kayak on May 6, 2010 and is currently a wholly-owned subsidiary of Kayak. Kayak owns all of swoodoo's intellectual property, including the rights in the television commercial at issue in this lawsuit and the confidential information disclosed by swoodoo pursuant to a non-disclosure agreement.

5.      Defendant Travelzoo Inc. ("Travelzoo") is a publicly-traded Delaware corporation with its corporate headquarters and principal place of business at 590 Madison Avenue, 37th Floor, New York, NY. Travelzoo operates websites and a subscriber e-newsletter through which it offers consumers and subscribers deals for airfare, hotels, cruises, vacation packages, car rentals, and tickets for shows and events.

6.      Travelzoo operates the website travelzoo.com, which is accessible to people all over the world. Fly.com is another travel search engine website that is wholly-owned and operated by Travelzoo. Travelzoo purchased the Fly.com domain on January 30, 2009 for approximately $1.76 million. Fly.com, like swoodoo and Kayak, aggregates travel-related information to allow users to book airline flights from various airlines and online travel agencies. Fly.com is a direct competitor of Kayak. Like Kayak, users cannot make travel-related purchases directly on Fly.com. Rather, consumers are redirected to other airline or online travel websites to make the actual purchase.

7.      Travelzoo, through its websites, Travelzoo.com and Fly.com, does business with consumers throughout the United States, including in this District.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 as this action arises under the United States Copyright Act, 17 U.S.C. §501, *et seq.*; and the doctrine of supplemental jurisdiction, 28 U.S.C. §1367. There is also subject

matter jurisdiction under 28 U.S.C. §1331, as the parties are of diverse citizenship and the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

9.      This court has personal jurisdiction over Travelzoo pursuant to Conn. Gen. Stat. §33-929(f) because Travelzoo and Fly.com do business in Connecticut through their websites and the infringing commercial was disseminated in Connecticut and within this Judicial District so as to make general and specific jurisdiction over Travelzoo fair and just.

10.     Venue in this District is proper pursuant to 28 U.S.C. §1400(a) in that Travelzoo does business in this District, and 28 U.S.C. §1391(b) in that a substantial part of the events giving rise to the claims occurred in this District.

## BACKGROUND

### *The swoodoo Commercial*

11.     As part of its marketing efforts, in late 2008, swoodoo decided to create an advertising campaign. Because it owned the brand and domain flugsupermarkt.com, and had not previously engaged in any marketing or advertising for that brand, swoodoo decided to use flugsupermarkt.com as the featured brand in the advertising campaign so that the impact of the ads could easily be measured.[1]

12.     swoodoo engaged an advertising agency in Germany, and together, the swoodoo personnel and the advertising agency created an original television commercial in a 30 second and 40 second version for the swoodoo brand, flugsupermarkt.com (the "swoodoo Commercial"). (A copy of the 30 second swoodoo Commercial is included as the first attachment on the disk included as Exhibit A).

---

[1] To that end, swoodoo launched flugsupermarkt.com as a "doorway page" whereby consumers entering that website would then press a large button on that page which would take them to the swoodoo.com site.

4

13.     swoodoo expended a significant amount of money and effort to develop and then disseminate the swoodoo Commercial.  The swoodoo Commercial first aired in Germany on December 26, 2008 and since then, has run continuously in Europe including Germany, Austria, Switzerland and for a time, in the Netherlands.

14.     The swoodoo Commercial features a number of distinctive and original elements, including (a) an original storyline; (b) the order and arrangement of the images in conjunction with the voice-over and storyline, including, the introductory image of a plane with the website listed beneath it, then, the inside of the plane and shots of passengers, followed by a close up and several shots of the website, ending with a final shot of the website name again; (c) the use of non-human depictions of passengers flying on a plane, some of whom are disappointed with the fares they paid, and only one being happy with the fare paid; (d) the depiction of the fares above the heads of the passengers inside of "bubbles," with the prices each passenger paid being placed inside the bubble and being drawn with the bottom portion of the bubble depicting that this is what the passenger said or thought, and then placed above the heads of the various passenger characters; (e) the naming of specific passengers in connection with the story line; (f) the words chosen for the voice over portions; (g) the inclusion of the swoodoo.com logo on the screen throughout the commercial; and (h) the overall lighting, coloration and tone, among other things. (A storyboard depicting the screen shots of the 30 second swoodoo Commercial, along with a certified English translation, are attached hereto as Exhibit B).

15.     The swoodoo Commercial is highly original and distinctive, and is entitled to protection as a copyrighted work.

5

16.    swoodoo owned the copyright in connection with the swoodoo Commercial. Under German law, no registration is necessary in order for the rights to attach. Upon acquisition of swoodoo by Kayak, the ownership transferred to Kayak. Kayak has filed applications for registrations for both versions of the swoodoo Commercial. (Documents from the Copyright Office's website reflecting the applications are attached hereto as Group Exhibit C).

***Travelzoo Courts swoodoo and Obtains Access to the swoodoo Commercial and Other Confidential Information.***

17.    In November 2009, then CEO of Travelzoo, Holger Bartel, approached swoodoo Chief Marketing Officer, Wolfgang Heigl, with the stated purpose of having Travelzoo and swoodoo potentially partner together in certain business ventures. To that end, in mid-November, Bartel and Heigl met for several hours in Munich, Germany.

18.    Shortly thereafter, at a travel-related conference in Orlando, Florida, Bartel invited Christian Saller, CEO of swoodoo, to dinner, where Bartel initiated discussions about Travelzoo acquiring swoodoo. A few days later, at Bartel's request, Saller traveled to Travelzoo's corporate offices in New York and the parties continued discussions there.

19.    Travelzoo began to conduct due diligence of swoodoo and requested certain information in that regard. Travelzoo and swoodoo entered into a non-disclosure agreement dated December 10, 2009, which governed the parties' disclosure of confidential and proprietary financial information, including swoodoo's intellectual property and its copyrighted materials (hereinafter the "NDA") in connection with the discussions. Because, at Travelzoo's request, swoodoo had already provided Travelzoo with certain confidential materials prior to the parties executing the NDA that it wanted to deem confidential, a list of

confidential information that had already been exchanged was attached to and incorporated in the NDA. (A copy of the NDA and attendant list is attached hereto as Exhibit D).

20.   The parties continued to meet in both New York and Munich after the NDA was signed, and engaged in detailed conversations as part of the due diligence process.   At various times, other personnel from both parties participated in certain meetings and discussions. This included but was not limited to, Christopher Loughlin, then Managing Director of Travelzoo in Europe but now CEO of Travelzoo, and Ralph Bartel, brother of Holger Bartel and then Chairman of the Board of Travelzoo, as well as Lars Jankowsky, Chief Technology Officer of swoodoo.

21.   Expecting to be protected by the NDA, in the course of the various meetings and discussions with Travelzoo, swoodoo provided Holger Bartel and Travelzoo with access to and details about its highly-successful television advertising campaign involving the swoodoo Commercial.   Specifically, Christian Saller showed Bartel the 30 second commercial, and showed him that it was accessible via youtube.com.  Bartel remarked that the ad was "much better than Kayak's ads."  Saller further disclosed confidential information about the specific and substantial sales increases and brand awareness numbers that had been achieved by virtue of the commercial.  He described how the use of the brand and "doorway page" for flugsupermarkt.com allowed swoodoo to wholly attribute all sales increases and brand awareness to the swoodoo Commercial since no other marketing of supermarkt.com had been conducted.

22.   swoodoo also provided Bartel and Travelzoo with the financial data directly tied to the swoodoo Commercial, which by all accounts was a huge success.  (*See, e.g.,*

7

http://eu.techcrunch.com/2010/05/06/kayak-swoops-on-german-travel-search-engine-swoodoo/, attached as Exhibit E, which details the success of the swoodoo campaign).

23.     The confidential information provided by swoodoo included portions of swoodoo's financial statements which disclosed the costs incurred for the swoodoo Commercial and its campaign, and its direct positive financial impact on swoodoo's gross revenues and its goodwill.

24.     Further, the confidential information provided by swoodoo projected the continued direct positive financial impact of the swoodoo Commercial through at least 2011.

25.     After the display of the swoodoo Commercial to Bartel and the discussions about the confidential financial aspects of it, Holger Bartel told at least Christian Saller and Wolfgang Heigl that he had showed the swoodoo Commercial to his marketing staff in the United States, and that they told Bartel that the ad would go over very well in the United States.

26.     For various reasons, negotiations between Travelzoo and swoodoo broke down. swoodoo terminated negotiations with Travelzoo on February 15, 2010.

27.     On February 27, 2010, Kayak and swoodoo signed a letter of intent for Kayak to acquire swoodoo.

28.     On May 6, 2010, Kayak acquired swoodoo.

### *Travelzoo's Unfair Competition and Copying of the swoodoo Commercial*

29.     Travelzoo acquired the fly.com domain name in January 2009.

30.     It launched the U.S. Fly.com site in February 2009, and its United Kingdom site in October 2009.  In early August 2010, Fly.com launched its German site.  This site competes directly with swoodoo.  (See http://www.tnooz.com/2010/08/06/news/fly-com-

launches-website-in-germany/, attached as Exhibit F, noting the launch of German site and comparing it to Kayak's swoodoo site).

31. The Fly.com website resembles the Kayak.com website in many ways, particularly, the overall "look and feel" of the site, including but not limited to the design of the screens, the layout of the pages and the display of the information.

32. Travelzoo also adopted a tagline that is used prominently on its website. The tagline, "Compare hundreds of travel sites in one search" is nearly identical to and confusingly similar to Kayak's pre-existing tagline, "Compare hundreds of travel sites at once."

33. Kayak's general counsel sent a letter to Holger Bartel of Travelzoo dated May 12, 2010, regarding the substantially similar website and tagline choice of Fly.com. Neither Mr. Bartel nor anyone else from Travelzoo responded to that letter.

34. In approximately July 2010, Travelzoo began publishing a television commercial in the United States for Fly.com ("Fly.com Commercial"). The Fly.com Commercial is so substantially similar to the swoodoo Commercial that it could not have been created independently. (A copy of the Fly.com Commercial is included as the second attachment on the disk included as Exhibit A). As noted above, Travelzoo viewed and had access to the swoodoo Commercial and confidential information relating to it prior to the creation of the Fly.com Commercial.

35. Travelzoo has and continues to publish the Fly.com Commercial on television throughout the United States, including but not limited to running the Fly.com Commercial on the Travel Channel and, upon information and belief, other cable networks.

9

36.     Upon information and belief, the infringing commercial has been viewed by many consumers in the United States, in Connecticut and in this District.

37.     Upon information and belief, Travelzoo has created and disseminated a similar, and nevertheless, infringing, commercial in the United Kingdom.

38.     Travelzoo's Fly.com Commercial blatantly copies the original, distinctive and protected elements of the swoodoo Commercial, including but not limited to: (a) the storyline; (b) the order and arrangement of the images in conjunction with the voice-over and storyline, including, the introductory image of a plane with the website listed beneath it, then, the inside of the plane and shots of passengers, a close up and several shots of the website, ending with a final shot of the website name again; (c) the use of non-human depictions of passengers flying on a plane, some of whom are disappointed with the fares they paid, and only one being happy with the fare paid; (d) the depiction of the fares above the heads of the passengers inside of "bubbles," with the prices each passenger paid being placed inside the bubble and being drawn with the bottom portion of the bubble depicting that this is what the passenger said or thought, and then placed above the heads of the various passenger characters; (e) the naming of specific passengers in connection with the story line; (f) the words chosen for the voice over portions; (g) the inclusion of the fly.com logo on the screen throughout the commercial; and (h) the overall lighting, coloration and tone, among other things. (Storyboards of the screen shots of the Fly.com Commercial along with the words that go along with the screen shots are attached hereto as Exhibit G).

39.     A comparison of the commercials in their entirety (*see* Ex. A) as well as a comparison of the storyboards for the two commercials in question (*compare* Ex. B with Ex.

H) demonstrates overwhelmingly that the Fly.com Commercial is a blatant replication of the swoodoo Commercial from both a specific and general "look and feel" standpoint.

40.    Travelzoo, having lost out on the opportunity to purchase swoodoo for itself, deliberated and willfully chose to usurp swoodoo's intellectual property and create a nearly identical television commercial for its own benefit.

### Communications with Travelzoo

41.    Kayak first discovered the Fly.com Commercial and Travelzoo's infringement of Kayak's copyrights in early August 2010.

42.    On August 11, 2010, Kayak, through its outside counsel, notified Travelzoo that the Fly.com Commercial infringed Kayak's copyrights in the swoodoo Commercial and demanded that it cease using the commercial immediately.  Kayak noted that Travelzoo had had access to the swoodoo Commercial, the strategy behind the way the commercial was created and launched, and confidential information about the direct correlation to increased revenues, by virtue of the parties' NDA. (A copy of the August 11, 2010 letter to Travelzoo is attached as Exhibit H).

43.    Travelzoo's outside counsel spoke with Kayak's counsel shortly thereafter, and then sent a letter on August 20, 2010 indicating that it would not cease and desist its use of the Fly.com Commercial.

### Kayak's Injury

44.    Travelzoo's conduct has injured Kayak economically and competitively. Kayak.com and Fly.com are direct competitors with one another, as are Fly.com and swoodoo.  If Kayak.com wanted to utilize its swoodoo Commercial in the U.S. or U.K.

11

market, it is now unable to do so given the confusion in the marketplace that exists as a result of Travelzoo's unlawful and confusingly similar Fly.com Commercial.

45.     The harm becomes even more exacerbated given that Fly.com has now launched in the German and European markets – the very markets where the swoodoo Commercial has aired.  Should Travelzoo use a similar version of its infringing Fly.com commercial in those markets, Kayak and its swoodoo brand will be damaged even more.  Additionally, upon information and belief, Travelzoo, on behalf of Fly.com, has recently attempted to acquire the German domain www.kayak.de in an effort to unlawfully compete or trade upon Kayak's trademarks in the same European markets in which it has now launched Fly.com.

46.     swoodoo and now Kayak have expended a tremendous amount of money and effort in connection with the creation, dissemination of and measurement of the swoodoo Commercial, and in connection with developing swoodoo and Kayak's brands.  Travelzoo has avoided these expenditures entirely, and has simply stolen for itself that which it could not lawfully acquire through an acquisition of swoodoo.

## COUNT I – WILLFUL COPYRIGHT INFRINGEMENT

47.     Kayak restates and incorporates each allegation made in paragraphs 1 to 46 as if fully stated herein.

48.     Kayak holds a valid and enforceable right in all of swoodoo's intellectual property, including the swoodoo Commercial.  Kayak filed applications to register its copyrights prior to the filing of this lawsuit in accord with 17 U.S.C. §411. (See Ex. C).

49.     Kayak has complied in all respects with the copyright law of the United States and Germany, and the provisions of the Berne Convention, and is the exclusive owner of the

all of swoodoo's intellectual property, including the swoodoo Commercial, which rights have been infringed by Travelzoo.

50.     Through the conduct alleged above, Travelzoo has violated Kayak's exclusive rights as the copyright owner of the swoodoo Commercial by substantially reproducing the swoodoo Commercial in the Fly.com Commercial, in violation of 17 U.S.C. §501 *et seq.*

51.     Through the conduct alleged above, Travelzoo has also violated Kayak's exclusive right to use and profit from its copyrighted intellectual property, including the reproduction of audio-visual works, specifically television and internet advertisements, in violation of 17 U.S.C. §§106 and 113.

52.     Travelzoo viewed and had access to the swoodoo Commercial and knew of the positive financial results of the swoodoo Commercial prior to the publication of the Fly.com Commercial because swoodoo showed Bartel the swoodoo Commercial and shared specific financial information showing the actual and projected business impact of the commercial pursuant to the parties' NDA.

53.     Travelzoo knew that Kayak was a direct competitor in the United States and other European markets, and that Kayak owned swoodoo's intellectual property and copyrights, including the swoodoo Commercial.

54.     Travelzoo willfully infringed Kayak's copyright when it created and published the Fly.com Commercial, in violation of 17 U.S.C. §501 *et seq.*

55.     Upon information and belief, Travelzoo has recognized additional revenue and increased goodwill directly tied to its infringement of Kayak's copyright through Travelzoo's publication of the Fly.com Commercial.

56.     Kayak is entitled to damages in an amount to be proven at trial, including profits attributable to the infringement under 17 U.S.C. §504.

57.     Travelzoo's infringement of Kayak's copyright has also caused Kayak irreparable injury because Travelzoo continues to publish the Fly.com Commercial in the United States and, on information and belief, other countries, thus continuing to harm Kayak's rights and its reputation.  Travelzoo's infringement of Kayak's copyright is yet another act evincing its continuous and systematic intent to ignore the law while competing with Kayak.  For example, Travelzoo has and continues to replicate the look and feel of Kayak's website, and Kayak's tagline, much as it unlawfully replicated the swoodoo Commercial.   Unless enjoined, Travelzoo will continue to publish the infringing Fly.com Commercial and Kayak will be irreparably harmed.

58.     Kayak's remedy at law is not adequate to compensate it for these inflicted and threatened injuries, and Kayak is entitled to remedies including injunctive relief as provided by 17 U.S.C. §502.

WHEREFORE, Kayak demands judgment against Travelzoo for its actual damages in an amount to be determined at trial, for statutory damages for all acts of infringement occurring after the effective date of Kayak's registration of its copyright, permanent injunctive relief pursuant to 17 U.S.C. §502 prohibiting Travelzoo from utilizing the infringing commercial in any form in the future without permission from Kayak, its attorneys' fees, interest, costs, and such other relief as this Court deems just and appropriate.

## COUNT II – VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICES ACT

59.     Kayak restates and incorporates each allegation made in paragraphs 1 to 58 as if fully stated herein.

14

60.     Travelzoo engages in the conduct of trade and commerce in the State of Connecticut within the meaning of Conn. Gen. Stat. §42-110a *et seq.*

61.     Travelzoo entered into negotiations to acquire swoodoo, and purported to be bound by the swoodoo NDA.  In the course of doing so, Travelzoo gained access to swoodoo's confidential and protected intellectual property, which included the swoodoo Commercial and confidential information relating to its success and related financial impacts.

62.     Through this deceptive trade practice, Travelzoo gained information to assure it that the Fly.com Commercial would be successful and generate certain increased revenue without having to expend resources to develop an advertising campaign that would generate results in the marketplace

63.     In violation of the NDA, Travelzoo deceptively utilized the confidential and proprietary information it learned in the course of negotiations for its own benefit in an attempt to unlawfully compete with Kayak.  It also utilized this confidential information as part of a course of conduct which includes: (a) adopting the same design, look and feel of the kayak.com website; (b) using a confusingly similar tagline to kayak; (c) upon information and belief, attempting to purchase the kayak.de domain in Germany; and (d) replicating and disseminating the Fly.com Commercial, which it knew would be successful and generate certain increased revenue based on the financial statements and projections supplied to Travelzoo by swoodoo pursuant to the swoodoo NDA.

64.     Travelzoo's deceptive and unfair course of conduct, as described above, has allowed it to unfairly compete in the marketplace against Kayak, it's competitor in the on-line travel search industry.

65.     Upon information and belief, Travelzoo's conduct has created additional gross revenue and profits, and increased goodwill to Travelzoo at Kayak's expense.

66.     Any one or more of these acts is or are unfair, immoral, unscrupulous or oppressive and constitute a violation of the Connecticut Unfair Trade Practices Act ("CUTPA") §42-110b.   Thus, Travelzoo has offended public policy as established by common law and statute, by willfully engaging in unfair methods of competition and deceptive practices in trade and commerce, and profiting therefrom to Kayak's loss and detriment.

67.     Kayak has suffered and continued to suffer damages and ascertainable losses as defined by Conn. Gen. Stat. §42-110g(a).

68.     A copy of this Complaint will be served upon the Attorney General and Commissioner of Consumer Protection in accord with Conn. Gen. Stat. §42-110g(c).

WHEREFORE, Kayak demands judgment against Travelzoo for damages in an amount to be determined at trial pursuant to Conn. Gen. Stat. §42-110g(a), punitive damages pursuant to Conn. Gen. Stat. §42-110g(a), its attorneys' fees, interest, costs, and such other equitable relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiff, Kayak, demands a jury trial on all claims so triable.

Dated at Harford, Connecticut this 3rd day of September, 2010.

Respectfully submitted,
**KAYAK SOFTWARE CORP.,**

Stuart D. Rosen [ct05472]
Sara R. Simeonidis [ct25566]
Bingham McCutchen LLP
One State Street
Hartford, CT 06103-3178
Phone:  (860) 240-2700
Fax:  (860) 240-2818
Email: stuart.rosen@bingham.com
Email: sara.simeonidis@bingham.com
Its Attorneys


*Of Counsel*

Nicole Nehama Auerbach
Henry Turner, Jr.
Valorem Law Group LLC
35 E. Wacker Dr., Ste. 3000
Chicago, IL 60601
Phone:  312.676.5460
Fax:  312.676.5499
Nicole.auerbach@valoremlaw.com
Hank.turner@valoremlaw.com

# UNITED STATED DISTRICT COURT
## DISTRICT OF CONNECTICUT

KAYAK SOFTWARE CORP.     )
                         )
         Plaintiff,       )
                         )    CIVIL ACTION NO. ____
        v.           )
                         )
TRAVELZOO, INC.        )
                         )
        Defendant.     )
                         )

## VERIFICATION OF KAREN KLEIN IN SUPPORT OF PLAINTIFF'S COMPLAINT

I, Karen Klein, being duly sworn, declare as follows:

1. I am General Counsel of Kayak Software Corporation ("Kayak").

2. As a result of my duties and responsibilities I am aware of and familiar with Kayak and its activities as set forth in the foregoing Complaint, and the facts therein are true to the best of my knowledge, information, and belief.

3. I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 1st day of September, 2010, at Chicago, Illinois.

_____
Karen Klein